# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM R. PANUSKI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 12-719-GMS |
| | ) |
| STEVEN WESLEY, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

William R. Panuski. *Pro se* petitioner.

Elizabeth R. McFarlan, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

## MEMORANDUM OPINION

$\underline{\text{Sept 30}}$, 2015

Wilmington, Delaware

---

[1]Warden Steven Wesley has replaced former Warden Phil Morgan, and original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner William R. Panuski ("Panuski") while he was incarcerated at the

Howard R. Young Correctional Institution in Wilmington, Delaware. . (D.I. 3; D.I. 7; D.I. 8)

For the reasons discussed, the court will deny the petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in Panuski's direct appeal, the facts leading

up to Panuski's arrest and conviction are as follows:

> In January 2009, Lt. Robert Moses, of the Delaware State Police High Technology
> Crimes Unit, identified a computer in the Wilmington, Delaware area that was using a
> peer-to-peer file sharing network known to contain child pornography. After connecting
> to that network, Moses identified more than twenty hard core child sexual abuse videos
> available for uploading at a particular IP address. Comcast Communications Company
> identified Panuski as the subscriber with that IP address.
>
> The police seized multiple computers and other digital media at Panuski's house.
> Analysis of those computers revealed hundreds of pictures and videos, including videos
> of adult males repeatedly raping 2 and 3 year-old girls, a male raping an infant, and the
> anal rape of a young child.

*Panuski v. State*, 3 A.3d 1098 (Table), 2010 WL 3398945, at *1(Del. Aug. 30, 2010).

In April 2009, Panuski was indicted and charged with twenty-nine counts of dealing in

child pornography in violation of 11 Del. Code Ann. § 1109(4). (D.I. 16 at 1) In September

2009, during his final case review, Panuski pled guilty to two counts of dealing in child

pornography, in exchange for which the State agreed to enter a *nolle prosequi* on all remaining

counts. *Id.* Prior to sentencing, Panuski filed a "motion to merge and/or downgrade counts for

sentencing," in which he requested that the trial court sentence him to two counts of the lesser

offense – possession of child pornography (Del. Code Ann. tit. 11, § 1111) – or, alternatively, to

one count of dealing in child pornography (Del. Code Ann. tit. 11, § 1109(4)). (D.I. 18.

1

Appellant's App. to Reply Supp. Mem. In *Panuski v. State*, No. 331, 2011, at A-20) The

Superior Court heard argument on the motion during the sentencing hearing and conducted a

colloquy with Panuski. *Id.* at A-29 to A-35. During the colloquy, the Superior Court offered

Panuski the opportunity to withdraw his plea and continue his challenge to the State's

indictment, or to proceed with sentencing on the two §1109 charges. Panuski did not withdraw

his plea and admitted to possessing two different images. The plea was not withdrawn or

vacated and the Superior Court rejected the arguments raised in the motion to merge/downgrade.

The Superior Court then sentenced Panuski to an aggregate of eight years of incarceration,

suspended after four years for a period of probation. *Id.* Panuski appealed, and the Delaware

Supreme Court affirmed Panuski's convictions. *See Panuski,* 2010 WL 3398945, at *2.

 In May 2011, Panuski filed a motion for post-conviction relief pursuant to Delaware

Superior Court Criminal Rule 61 ("Rule 61 motion"). *See Panuski v. State*, 2012 WL 1413159

(Del. Super. Ct. Feb 1, 2012). The Superior Court summarily denied the Rule 61 motion, and

Panuski appealed. *Id.* at *1. The Delaware Supreme Court determined that the Superior Court

had only ruled on two of Panuski's five claims, and remanded the case back to the Superior

Court to consider and rule on Panuski's remaining three claims. *Id.* The Delaware Supreme

Court also ordered the Superior Court to expand the record to include defense counsel's affidavit

responses to the allegations of ineffective assistance. *Id.* On remand, the Superior Court denied

the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Panuski*, 2012

WL 1413159, at *5; *Panuski v. State*, 41 A.3d 416, 423 (Del. 2012).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only

"on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards

for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

3

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

4

rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state

---

[2]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

5

court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Panuski's timely filed petition asserts the following four grounds for relief: (1) Panuski's guilty plea was not knowingly and voluntarily made because he became confused during the sentencing hearing and believed he was changing his plea and pleading guilty to two counts of

possession of child pornography, rather than to two counts of dealing in child pornography; (2)

his two convictions for dealing in child pornography violate the double jeopardy clause; (3)

defense counsel provided ineffective assistance during the sentencing hearing and on direct

appeal; and (4) ambiguity surrounds the meaning of the term "possession" as it is used in Del.

Code Ann. tit. 11, § 1109 and Del. Code Ann. tit. 11, § 1111, and Panuski asks the court to

provide "guidance" on how to interpret the statutes. The court will address these claims *in*

*seriatim*.

## A. Claim One: Involuntary Guilty Plea

In claim one of this proceeding, Panuski appears to contend that his guilty plea was

somehow rendered involuntary because the Superior Court engaged in a confusing colloquy with

him during the sentencing hearing. More specifically, Panuski asserts that the Superior Court

misled him to believe that it was allowing him to change his plea and plead guilty to two counts

of possession of child pornography rather than the more serious charges of dealing in child

pornography. Panuski presented this claim to the Delaware Supreme Court on post-conviction

appeal, and the Delaware Supreme Court rejected the claim as factually baseless. *See Panuski*,

41 A.3d at 423. Given the Delaware Supreme Court's adjudication of this issue, Panuski will

only be entitled to relief if the Delaware Supreme Court's decision was contrary to, or an

unreasonable application of, clearly established Federal law, or if it was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. In order to better understand Panuski's argument, the court will provide a brief

summary of the relevant background information.

Counts one and two of the indictment charged Panuski with unlawfully dealing in child

pornography (Del. Code Ann. tit. 11, §1109(4)) as follows:

William R. Panuski, on or about the 5th day of March, 2009, in the County of New Castle, State of Delaware, did intentionally compile, access, receive, exchange, disseminate, store, reproduce or otherwise possess a computer file which depicts a child engaging in a prohibited sexual act of in the simulation of such an act.

(D.I. 10 at 5) In September 2009, while under oath before the Superior Court, Panuski pled guilty to two counts of dealing in child pornography. However, in November 2009, prior to sentencing, Panuski filed a "motion to downgrade/merge counts for sentencing," asserting the following two arguments as to why he should be sentenced for two counts of possession of child pornography or for only one count of dealing in child pornography: (1) given the generic charging language of the indictment for dealing in child pornography (Del. Code Ann. tit. 11, § 1109(4)) and the generic language contained in the statute criminalizing possession of child pornography (Del. Code Ann. tit. 11, § 1111), Panuski should be sentenced under the lesser offense -- possession of child pornography -- in order to avoid violating the double jeopardy clause; and (2) the two counts of dealing in child pornography to which Panuski pled guilty merged into once offense of unlawfully dealing in child pornography, because the indictment failed to articulate that each count necessarily represented a separate image/video. (D.I. 18, App. to Reply Supp. Mem. in *Panuski v. State*, No. 331, 2011, at A-20 to A-27)

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Panuski's plea colloquy contains his clear and explicit statements that he had discussed his case with defense counsel, that the statements on the Truth-in-Sentencing Guilty Plea Form he signed were complete and accurate, that nobody forced him to enter a plea, and that he understood that he was pleading guilty to two counts of dealing in child pornography. (D.I. 18, App. to State's Ans. Br. in *Panuski v. State*,

No. 88, 2010, at B-3 to B-5) During the plea colloquy, defense counsel informed the Superior Court of his intention to file a motion to merge the convictions prior to sentencing, but also stated that Panuski "understands, as things sit here right here and now, that he's pleading guilty to two counts; that each carry two to twenty-five; and that consecutive would be four to fifty." (D.I. 10 at 15) When asked by the Superior Court, Panuski affirmed that defense counsel's statements were correct. *Id.* at 16. Thus, the plea transcript demonstrates that Panuski's plea was voluntary and knowing.

In turn, the transcript of the sentencing hearing belies Panuski's contention that the Superior Court's colloquy with him during the sentencing hearing was so ambiguous and/or misleading such that he became confused and believed he was entering a new plea to two counts of possession of child pornography. Although defense counsel, the State, and the Superior Court all referred to Panuski as admitting to possessing two separate photographs, the use of the word "possession" was used in conjunction with the offense of dealing in child pornography. For instance, the State argued that,

> In essence, the State reviewed the evidence in this case and elected to charge Mr. Panuski under the "dealing" statute. We were prepared under the statute to prove that he was intentionally compiling, accessing, receiving, exchanging, disseminating, storing, reproducing or otherwise possessing a computer file which depicted a child engaged in a prohibited sex act.

(D.I. 10 at 36) The Superior Court explained,

> But I think, though, in fairness to the State in this case, it thought it was getting a plea on two different photographs. If that's not the case, then I would be willing to vacate the plea and either have the defendant plead to possessing two separate photographs or have him go to trial.

> \*     \*     \*     \*

> Here is what I'm going to do. I'm putting the defendant to the test. If he is willing to admit to possessing two separate photographs [] then I'm going to sentence him. If he's

9

not, I'm going to vacate the plea and the State can do whatever it wishes to do, including taking him to trial.

(D.I. 10 at 37) At that juncture, Panuski stood up, and the Superior Court asked if he was "willing to admit" that he "possessed two different photographs which constitute child pornography." *Id.* Panuski replied, "Yes, Your Honor." *Id.* Significantly, the Superior Court never stated that the original plea was vacated, and Panuski was sentenced on the two convictions of dealing in child pornography to which he had pled guilty.

Given the foregoing record, the court cannot conclude that the Delaware Supreme Court's denial of claim one was based on an unreasonable determination of facts. Panuski's unsupported allegations of confusion fail to provide compelling evidence as to why the statements he made during the plea colloquy and the sentencing hearing should not be presumptively accepted as true. Therefore, the court will deny claim one for failing to satisfy § 2254(d).

**B. Claim Two: Double Jeopardy**

In claim two, Panuski contends that his convictions for two counts of dealing in child pornography under §1109(4) violate the double jeopardy clause because: (1) both Del. Code Ann. tit. 11, §1111(possession) and Del. Code Ann. tit. 11, § 1109(4) (dealing) prohibit the same conduct – "mere" possession of child pornography – such that sentencing him on the more serious "dealing in pornography" conviction under § 1109 violated the double jeopardy; and (2) the indictment did not specify what he did other than possess child pornography on the same day (March 5, 2009), and the State did not demonstrate that he actually pled guilty to two charges relating to two different images. The Delaware Supreme denied claim two as meritless on direct

10

appeal. Therefore, Panuski will only be entitled to relief if that decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Double Jeopardy Clause protects a defendant against: (1) successive prosecutions; (2) multiple charges under separate statutes requiring proof of the same factual events; and (3) multiple charges under the same statute. U.S. const. amend. V. Panuski's instant argument appears to allege double jeopardy violations falling within subsections (2) and (3) listed above. For instance, by contending that Del. Code Ann. tit. 11, § 1109(4) and Del. Code Ann. tit. 11, § 1111 both punish the same wrongdoing – possession of child pornography – and that convictions under both statutes would violate double jeopardy, Panuski appears to be seeking relief for multiple charges under separate statues requiring proof of the same factual events ("double jeopardy argument"). In turn, by contending that the charging language of the indictment was so insufficiently specific that the State failed to demonstrate he had been charged with dealing two separate images/videos of child pornography, Panuski appears to be contending that the two counts for dealing in child pornography were multiplicitous, and that he was given two sentences for the same offense in violation of the double jeopardy clause ("multiplicity argument").

The traditional test for double jeopardy claims involving the charging of multiple offenses under separate statutes is the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). Pursuant to *Blockburger*, a court must analyze "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). The rule articulated in *Blockburger* is a "rule of statutory construction to help determine legislative intent;" the rule is "not controlling when the legislative intent is clear from the face of

11

the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 778-79 (1985)(internal citations omitted). Consequently, "even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).

As for Panuski's multiplicity argument, when a defendant is convicted of violating one statute multiple times, "the question is whether the facts underlying each count were intended by [the legislature] to constitute separate 'units' of prosecution." *Bell v. United States*, 349 U.S. 81, 83-84 (1955). In other words, when determining whether the imposition of multiple punishments and/or convictions in a single prosecution violates the double jeopardy clause, the "clearly established" Supreme Court precedent requires a court to ascertain whether the multiple punishments and/or convictions comply with the legislative intent of the applicable statutes.

To begin, the Delaware Supreme Court's decision denying claim two was not contrary to clearly established federal law, because the state court identified the proper double jeopardy and multiplicity principles applicable to Panuski's claim.[3] *See Williams v. Taylor*, 529 U.S. 362, 406 (2000) ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court also concludes that the Delaware Supreme Court's denial of claim two involved a reasonable application of the Supreme Court precedent governing double

---

[3]When denying Panuski's double jeopardy argument on direct appeal, the Delaware Supreme Court cited to *Williams v. State*, 796 A.2d 1281, 1285 (Del. 2002), a state court decision interpreting the Supreme Court double jeopardy jurisprudence applicable to the instant argument. Specifically, the *Williams* decision identifies the following decisions as the appropriate federal standards for assessing a double jeopardy claim: *Blockburger v. United States*, 284 U.S. 299 (1932) and *Shiro v. Farley*, 510 U.S. 222 (1994).

jeopardy/multiplicity claims. With respect to his argument that § 1109(4) and § 1111 both punish the same wrongdoing – possession of child pornography – and that convictions under both statutes would violate double jeopardy, Panuski ignores the fact that he was not charged with the same offense under two different statutes. Rather, he was charged with twenty-nine offenses under the same statute -- § 1109(4) -- and he eventually pled guilty to two counts of dealing in child pornography under § 1109(4). During both his plea colloquy and his sentencing hearing, Panuski admitted to possessing two different illegal images of child pornography, and he acknowledged that the two counts to which he pled involved separate images. Given these circumstances, the court concludes that the Delaware Supreme Court reasonably applied Supreme Court precedent in denying this double jeopardy argument of claim two.

As for Panuski's loosely based multiplicity argument that the indictment's lack of specificity created doubt as to whether he pled guilty to two separate charges related to two different images, primarily because both counts allege that the offenses occurred on the same day (March 5, 2009), he again ignores the fact that he admitted to possessing two different illegal images of child pornography during his plea colloquy and his sentencing hearing. Additionally, although the indictment asserts that Panuski's intentional receipt, storage, and dissemination of multiple files containing videos of child pornography in violation of § 1109(4) occurred on or about March 5, 2009, the state court record shows that the basis for identifying March 5, 2009 as the relevant date was because that was the date detectives seized his computer.

When multiple counts of dealing in child pornography are each based upon a separate, distinct depiction or image, those counts do not merge into one collective offense. *See Fink v. Phelps*, 817 A.2d 781, 788 (Del. 2003); *see also United States v. Starr*, 2013 WL 1644867, at *5 (E.D. Ky. April 16, 2013) (possession of multiple distinct images of child pornography supports

13

separate charges regardless of the date the images are download). In other words, "each individual 'visual depiction' of child pornography that is knowingly 'dealt' or possessed by a defendant constitutes the basis for a separate offenses under the statutes [§ 1109(4) and § 1111]," regardless of the date on which the images were seized. *Fink*, 817 A.2d at 788. Here, there was no multiplicity/double jeopardy issue because Panuski committed a separate and discrete violation of § 1109(4) multiple times on March 5, 2009 by possessing **different child pornographic images**. (D.I. 18, App. to State's Ans. Br. in *Panuski v. State*, No. 88, 2010, at B-13 to B-14) Thus, the Delaware Supreme Court's denial of Panuski's multiplicity/lack of specificity argument constituted a reasonable application of the governing Supreme Court precedent.

## C. Claim Three: Ineffective Assistance of Counsel

Next, Panuski contends that defense counsel provided ineffective assistance by: (1) failing to object to the allegedly misleading colloquy that occurred between Panuski and the Superior Court during the sentencing hearing; (2) not challenging the "ambiguous" nature of the Superior Court's sentencing colloquy on direct appeal; and (3) not realizing that the constitutionality of a criminal statute cannot be challenged after entering a plea which, presumably, caused counsel to not challenge the constitutionality of the counts in the indictment prior to Panuski's plea colloquy. Panuski presented all three subsections of claim three in a convoluted manner to the Delaware Supreme Court on post-conviction appeal. Although the Delaware Supreme Court only mentioned subsections (2) and (3) when it denied claim three, the court presumes that all three subsections were decided on the merits. *See Harrington*, 562 U.S. at 100. Thus, the court will review the Delaware Supreme Court's denial of claim three under § 2254(d) to determine if Panuski is entitled to relief.

14

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware state courts identified the *Strickland/Hill* standard as governing Panuski's instant ineffective assistance of counsel contention. As such, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

15

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* to the facts of Panuski's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Panuski's ineffective assistance of counsel claims through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

To begin, the court finds unavailing Panuski's contentions that defense counsel performed ineffectively by failing to object to the alleged ambiguity of the sentencing colloquy during the sentencing hearing and on direct appeal. When hearing argument on defense counsel's motion to merge/downgrade Panuski's convictions and/or sentences, the Superior Court was clear in its comments to defense counsel and Panuski that either the prior plea agreement stood as a valid representation of Panuski admitting that he possessed two separate images as opposed to only one image, or the court would vacate Panuski's plea and he could proceed to trial. Additionally, when responding to defense counsel's argument concerning the ambiguous wording of the indictment, the Superior Court informed Panuski and counsel, "I'm going to give you a chance to appeal that." (D.I. 10 at 37) Significantly, the Superior Court did not grant the motion to merge/downgrade. (D.I. 10 at 39).

In turn, the fact that the Superior Court used the term "possess" during the colloquy does not in any way indicate that the sentencing court granted the motion to merge or permitted Panuski to change his guilty plea from dealing in child pornography to possession of child pornography. Rather, the use of the word "possess" accurately reflected the fact that § 1109(4) itself uses the phrase "otherwise possessed" in defining the offense of dealing in pornography. Indeed, in his Rule 61 affidavit, defense counsel explains that he "advised Mr. Panuski of the

16

draconian nature of this statute [1109] – that despite its title of "Dealing" in Child Pornography, the statute also punishes persons who merely download and possess images/videos of child pornography. (D.I. 18, Affid. of Thomas A. Foley, at ¶ 2)

Based on the foregoing, the court concludes that defense counsel's "failure" to object to the alleged ambiguity of the Superior Court's sentencing colloquy was neither deficient nor prejudicial, because there was nothing ambiguous about: (1) the Superior Court giving Panuski a choice on how to proceed: either vacate the plea or admit to possessing two images and be sentenced on the existing plea; (2) Panuski's explicit admission that he possessed two separate images of child pornography; (3) the Superior Court's rejection of the arguments in the motion to merge/downgrade; (4) the fact that the guilty plea was not vacated, supported by the simple fact that there was no subsequent trial; and (5) the fact that Panuski was sentenced for his two convictions for dealing in child pornography.

Panuski's contention that defense counsel was ineffective for not challenging the constitutionality of the indictment prior to the plea colloquy, and/or relatedly failing to realize that he could not challenge the constitutionality of a criminal statute after entering a plea, is similarly unavailing. In his Rule 61 affidavit, defense counsel explains that he made a strategic decision to avoid signaling to the State that he intended to challenge the indictment while the State still had an opportunity to amend the indictment. (D.I. 18, Affidavit of Thomas A. Foley, at ¶¶ 7-8) When viewed in context with the fact that Panuski had been charged with twenty-nine counts of dealing in child pornography, and that Panuski had admitted to the police that he had downloaded multiple images of child pornography to his computer, defense counsel reasonably sought a plea agreement to limit Panuski's exposure to a very lengthy prison sentence. Defense counsel was aware that Panuski's admission that he intentionally downloaded images of the child

17

pornography to his computer and made those images available to others through a file-sharing program made Panuski culpable under the dealing statute. Faced with Panuski's clear possession of the prohibited items stored on his computer, counsel had very limited possibilities to defend against the charges. Defense counsel's hope was that the lack of specific statutory language would allow argument at sentencing that the charges were merely possession and that the charges should thus be downgraded to the less onerous charge of possession of child pornography. In short, Defense counsel's decision to advise Panuski to accept the generous plea offer and to still try to have the charges downgraded at sentencing by challenging his convictions was manifestly reasonable.

Moreover, Panuski cannot demonstrate prejudice from any of defense counsel's alleged deficiencies. Panuski had admitted to the police that he possessed child pornography on his computer. Counsel was able to negotiate a very favorable plea agreement, saving Panuski from what would have essentially been a life sentence in prison. Additionally, Panuski acknowledges that he had no viable trial defense. Given all of these circumstances, Panuski cannot demonstrate a reasonable probability that he would have insisted on proceeding to trial but for counsel's actions during the sentencing hearing or his failure to challenge the constitutionality of the indictment and/or statutes prior to entering a plea.

Accordingly, the court will deny claim three as meritless.

### D. Claim Four: Ambiguity in Del. Code Ann. tit. 11, § 1109 and § 1111

Finally, Panuski contends that § 1109 and § 1111 are ambiguous because both statutes appear to prohibit the same conduct ("mere possession"), and the Delaware state courts have not adequately distinguished between the two. After reviewing all of Panuski's prior submissions to the Delaware state court, it appears that Panuski is asserting the same argument defense counsel

18

presented on direct appeal, namely, that "possessing images of child pornography on one's computer is punished under both § 1109(4) and § 1111. From both a police and common sense perspective, it would otherwise make sense to differentiate the person who downloads and possesses child pornography, from the person who actively disseminates and distributes the images to others." (D.I., 18, Appellant's Op. Br. in *Panuski v. State*, No. 88, 2010, at 6) Panuski also presented various versions of this same argument to the Delaware state courts in his Rule 61 proceeding. Thus, the court disagrees with the State's argument that claim four should be denied as procedurally barred.

However, the court notes that the Delaware Supreme never explicitly addressed Panuski's particular argument concerning the alleged ambiguity in §1109(4) and §1111, because it denied all of Panuski's related claims on the basis that Panuski had only been charged with, and convicted of, violating one statute --- § 1109(4). In other words, given the factual predicate of Panuski's case, the Delaware state courts did not need to address Panuski's arguments concerning §1111.

"The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy," and a "federal court [lacks] the power to render advisory opinions." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) To satisfy Article III's "case or controversy" requirement, an action must present: (1) a legal controversy that is real and not hypothetical; (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication; and (3) a legal controversy so as to sharpen the issues for judicial resolution. *See Keitel v. Mazurkiewicz*, 729 F.3d 278 (3d Cir. 2013). In this proceeding, Panuski asks the court to provide "guidance" on the distinctions between the Del. Code Ann. tit. 11, § 1109(4) and Del. Code Ann. tit. 11, § 1111. Providing

19

guidance on how to interpret § 1111 would, in effect, be equivalent to issuing an advisory opinion, because Panuski was only charged with, and convicted of, committing offenses under § 1109(4). In other words, the alleged ambiguity of § 1111 is irrelevant to determining if Panuski's custody pursuant to his convictions and sentences under § 1109(4) is unconstitutional. Accordingly, the court will deny claim four for lack of jurisdiction.[4]

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Panuski's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Panuski's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.

---

[4]To the extent claim four merely reasserts in a different manner the same double jeopardy/multiplicity arguments Panuski presented in his petition, the court has already concluded that they lack merit.

20